# EXHIBIT "E"



# THE GUARANTEE COMPANY OF NORTH AMERICA USA
## AGREEMENT FOR SURETY BOND PRODUCER/AGENT/BROKER

THIS AGREEMENT made this 24th day of April, 2007 by and between **THE GUARANTEE COMPANY OF NORTH AMERICA USA**, hereinafter designated as "Company," and J. Smith Lanier & Company, hereinafter designated as "Producer/Agent/Broker."

WHEREAS, Producer/Agent/Broker is desirous of placing surety bond business with the Company; and

WHEREAS, Company is willing to write said business subject to the terms, conditions and limitations set forth hereinafter;

NOW THEREFORE, IT IS MUTUALLY AGREED AS FOLLOWS:

I. <u>GENERAL</u>
1. The Producer/Agent/Broker may submit applications to Company for surety business in the states where Surety Company is licensed.
2. The Producer/Agent/Broker shall hold valid insurance broker or agent licenses issued by all states in which any business transacted under this agreement is located. These licenses will be maintained in full force and effect for the duration of this agreement. If Producer/Agent/Broker breaches this requirement, Producer/Agent/Broker agrees to indemnify Company for any penalties or legal expenses Company incurs. Producer/Agent/Broker's responsibility as a producer shall include those as prescribed by the laws of those states in which Producer/Agent/Broker conducts business. This will include compliance with all Surplus Lines laws when dealing with Company on a non-admitted basis.
3. Company shall give the Producer/Agent/Broker concurrent notice of cancellation on any direct billed business for nonpayment of premium and prior notice of all other cancellations.
4. Producer/Agent/Broker has no authority to commit Company to any surety obligation. Producer/Agent/Broker clients submitted for surety consideration will be underwritten by Company and no Surety credit will be given unless expressly authorized in writing.
5. Producer/Agent/Broker has no authority to make, waive, alter or amend any provisions or premiums of any Company's surety bonds without the expressed written consent of Company. Producer/Agent/Broker shall not extend the time of premiums, not execute any consents to any contracts or other documents, nor incur or admit to any liability on behalf of Company.
6. Producer/Agent/Broker specifically acknowledges that due to the nature of suretyship and surety credit, Company has the option of dealing directly with client as regards all aspects of the surety relationship included but not limited to exchange of information, issuance of surety bonds billing and payment of premiums.
7. Producer/Agent/Broker shall immediately inform Company of any change in the financial position of client and any claim presented to Producer/Agent/Broker by client or any third party.
8. Producer/Agent/Broker has no authority, either expressed or implied, with respect to the handling of claims.
9. Company reserves the right to refuse surety credit and/or issue surety bonds at any time.
10. Company shall hold Producer/Agent/Broker harmless from any civil liability resulting from Company's error or omission in services performed under this Agreement. Such indemnification shall include reasonable legal fees incurred in connection with the investigation or defense against any claim. The above provision is contingent upon the Producer/Agent/Broker notifying Company within 5 days when receiving notice of any claim that would be covered by this section.
11. Producer/Agent/Broker agrees to adhere to the administrative rules and procedures of Company.
12. Producer/Agent/Broker will not distribute any advertisements, circulars or other materials, electronic, written or otherwise, referring to company name or logo without first obtaining written approval from Company.
13. This agreement does not provide the Producer/Agent/Broker exclusive right to any geographic area.

II. <u>AUTHORITY OF PRODUCER/AGENT/BROKER</u>
1. To solicit surety for the classes of business which Company writes and to deliver policies therefore which Company has authorized.

2. To collect, receive and faithfully account for premiums and other charged fees. All premiums and other charged fees received by Producer/Agent/Broker (excluding commissions) shall be held by Producer/Agent/Broker in a fiduciary capacity as trustee for Company.

## III. COMPENSATION

1. Company will pay Producer/Agent/Broker commissions at the rates specified in the Producer/Agent/Broker Commission Schedule, which may be amended from time to time in writing by Company.
2. Producer/Agent/Broker may retain out of premiums collected by Producer/Agent/Broker, the commissions payable under this section.
3. Producer/Agent/Broker agrees to return promptly to Company commissions retained by him or paid by Company on premiums refunded under any policy by reason of cancellation or otherwise, whether the refund is made during term of this Agreement or thereafter. Commissions to be refunded on returned premiums shall be at the same rate at which commissions were originally retained.
4. The commissions payable under this section shall be the full compensation on business placed by the Producer/Agent/Broker with Company. Company is not responsible for any expenses incurred by Producer/Agent/Broker.

## IV. COLLECTIONS

1. Producer/Agent/Broker is responsible for the collection of all premiums on business placed with Company. Producer/Agent/Broker acknowledges responsibility for premiums on all bond undertakings and agrees to remit premiums to Company regardless of their collectability.
2. Producer/Agent/Broker may relieve himself of responsibility for the collection of additional premiums due on audit or anniversary premiums on surety bonds by requesting Company in writing to undertake collection thereof directly, provided his request is made within 45 days of the anniversary date or effective date of adjustment. No commissions are payable on premiums which Producer/Agent/Broker requests Company to collect.
3. If Producer/Agent/Broker has not properly accounted for and paid over all premiums due Company, Producer/Agent/ Broker's records and use and control of renewals shall become the property of Company. Company shall have the right to retain commission income payable to Producer/Agent/Broker and to sell the renewals to satisfy the indebtedness.

## V. ACCOUNTS

1. Company will furnish invoices of all premium (net of commissions) and fee generated transactions to Producer/Agent/Broker at the time the policy is written or service rendered. Producer/Agent/Broker is then responsible for remitting the premium (net of commission) and fee charges within 30 days of the date of invoice. Any discrepancies in charges should be addressed immediately to Company.
2. All accounts, vouchers and records and all other documents and correspondence pertaining to Company's business shall be open to examination during normal business hours by Company's authorized representatives.

## VI. TERMINATION

1. This Agreement will terminate.
   a. Upon 30 days of either party giving written notice to the other.
   b. Automatically if any public authority cancels or declines to renew Producer/Agent/Broker license.
   c. Automatically on the effective date of sale, transfer or merger of Producer/Agent/Broker business.
   d. Immediately if either party becomes insolvent, makes an assignment for the benefit of creditors, or if a petition in bankruptcy is filed by or against either party or a complaint makes an assignment for the benefit of the creditors, or if a petition in bankruptcy is filed against either party or a complaint in equity or other proceedings for the appointment of a receiver for either party is filed or if proceedings for reorganization or for compromise with creditors under any State or Federal law instituted by or against either party.
2. Any unused policy forms and other unused Producer/Agent/Broker supplies furnished by Company to Producer/Agent/Broker remain the property of Company and shall be accounted for and returned by Producer/Agent/Broker to Company on demand.

## VII. DEFINITIONS

1. When used in reference to this Agreement, "policy" means a policy of insurance or bond or other contract of suretyship.

## VIII. MISCELLANEOUS

1. Neither Company nor Producer/Agent/Broker shall directly or indirectly assign its rights and obligations under this Agreement in whole or in part without the prior written approval of the other party.

2. In the event that any of the provisions or portions of this Agreement are held to be invalid or unenforceable by any court of competent jurisdiction, the validity and enforceability or the remaining provisions or portions shall not be affected by the invalid or unenforceable provisions or by its severance here from.
3. Nothing contained in this agreement shall be construed to create the relationship of the employer and employee between Company and Producer/Agent/Broker or any of its employees.

This Agreement, together with the Commission Schedule, and amendments to the foregoing signed by the parties, constitutes the full agreement of the parties and supersedes all previous Agreements, oral or written, between Producer/Agent/Broker and Company. This Agreement may not be modified except in writing and signed by all parties.

Signed this 24th day of April, 2007

IN WITNESS WHEREOF, the Parties have hereto set their hands and seals on this 24th day of April, 2007

Witness

Witness

The Guarantee Company of North America USA

Producer/Agent/Broker

J. Smith Lanier & Company

By _____

Title: V.P. of Marketing
Broker or Agent License No.

Entity: Individual
Partnership
Corporation XXX
Other

Employer Tax ID No. or SS Number

Please attach a copy of Producer/Agent/Broker License